# CHARLESTON.

RORER v. HOLSTON NATIONAL BUILDING & LOAN ASSOCIATION.

55 255
e 60 477

Submitted March 1, 1904—Decided March 8, 1904.

1. USURY—*Trust Deed—Grantor.*

   The grantor in a deed of trust, conveying real estate to secure the payment of an usurious debt, may, in a suit in equity instituted by him to purge the debt of its usury, after having conveyed the land to a third party by deed with a covenant of general warranty, enjoin the sale of the property under the deed of trust pending the suit.   (p. 257).

2. USURIOUS DEBT—*Jurisdiction.*

   In such case, the jurisdiction to enjoin rests upon the inherent power of the court to maintain its jurisdiction to give full and complete relief between the parties to the main cause of action by preventing either of them from interfering with or obstructing it by proceedings *in pais* or in a forum other than the one having jurisdiction, and also upon the lack of any other remedy by which the plaintiff can prevent the defendant from fixing upon him inevitable liability to an innocent third party for a demand which as between the original parties, may be resisted and defeated on the ground of utter invalidity. (p. 295).

3. INJUNCTION—*Bill—Error.*

   In such case, it is error to dissolve the injunction in advance of the hearing, unless it appears that the allegations of the bill cannot be, or probably will not be, sustained, or that the plaintiff is not prosecuting his suit with due diligence. (p. 260).

Appeal from Circuit Court, Mercer County:

Action by Ernest Rorer against the Holston National Building and Loan Association.   Decree for defendant, and plaintiff appeals.

*Reversed.*

ANDERSON & EASLEY, for appellant.

W. WALTER MCCLUGHERTY, for appellee.

POFFENBARGER, PRESIDENT:

Ernest Rorer borrowed eight hundred dollars from the Holston National Building and Loan Association of Bristol, Ten-

nessee, on the 15th day of February, 1893, on eight shares of stock in said association, subscribed for by him, executing his bond for said sum of eight hundred dollars and a deed of trust upon certain real estate to secure the payment thereof. The bond contained the following condition, which conforms to the provisions of the by-laws of the association, respecting the payment of premium: "Now if I pay promptly the monthly interest on said sum of $800.00-100 and the monthly premium of $4.00 bid by me for said loan, and the monthly payments on said shares of stock and any fines assessed under the rules of said association, and the taxes accruing on the lot of land described in the mortgage securing this obligation and the premiums necessary to keep the house on said lot insured in such sum as said association may require (not exceeding $800.00-100) until the said stock becomes fully paid in and of the value of $100 per share, then it is understood that, upon the surrender of said stock to said association, this note shall be deemed fully paid and cancelled." Rorer paid the dues, interest, premium and other charges until April 30, 1895, amounting to $358.00. In April, 1895, he conveyed the land on which the loan was secured to G. H. Wade, by deed with a covenant of general warranty, for the sum of $2,500.00, of which sum Wade agreed, acording to the recitals of the deed, to pay six hundred dollars on the building association debt in monthly installments as Rorer had agreed to pay them. After having paid $739.50 to the building and loan association, Wade ceased to make payments, and the trustee in the deed of trust advertised the land for sale to satisfy a balance due on the loan of $567.02. Thereupon Rorer brought this suit to enjoin the sale, charging in his bill usury in the debt and praying that it be enpunged therefrom, and, on the 4th day of October, 1902, on motion of the defendant, the injunction was dissolved. The appeal is from the order of dissolution.

The bill treated the property as still owned by the plaintiff, making no mention of the sale to Wade, and the order dissolving the injunction stands upon the answer of the building association, fully proven, showing the conveyance by Rorer to Wade, in consideration of $2,500.00. The deed recites that $600.00 of the purchase money was to be paid to the building association and the balance to Rorer in three equal installments secured by deed of trust on the property, but the answer avers an assumption by

Wade of Rorer's contract with the building association. It further appears from an exhibit filed with a deposition that Rorer has made a general assignment for the benefit of his creditors on the 23rd day of April, 1898. The record does not show any deed of trust from Wade to Rorer, nor, if it did, is there any allegation or proof that any of the purchase money due to Rorer remains unpaid. Wade's affidavit is filed in resistance of the motion to dissolve and in it he says: "Affiant does not owe the plaintiff anything at all on account of the purchase money mentioned in said exhibit 'Deed.'"

That Rorer may maintain a bill to purge the debt of usury, if it be usurious, is undeniable, and the only question presented is, whether he can enjoin the sale. He has no title, either legal or equitable, to the property, nor any lien upon it, so far as appears from this record. Can he enjoin the sale of another man's property for the satisfaction of an usurious debt? No authority for or against such a proceeding has been furnished or found. It is urged, however, that as the plaintiff will be liable to Wade for any sum which he may be compelled to pay on account of this debt, in excess of the $600.00 which he agreed to pay on it, he ought to be permitted to prevent the sale. But his liability to refund is not an interest or estate in the property, the sale of which is threatened, and he has his remedy against the building association to recover back any usurious interest which he may be compelled to pay. This Court held in *Jackson* v. *Kittle,* 34 W. Va. 207, that: "As a general rule, a party cannot maintain a suit to remove a cloud or a bill *quia timet,* who has no other interest than the fact that he has sold the property with a covenant of general warranty; but in a case, where evidence is about to be lost, or the party's inertia would result in the perfecting of an adverse title, he is not bound to lie by, but may bring his bill of *quia timet.*" But this case is not within the rule. There a stranger set up, or threatened to assert, an adverse title with which the warrantor had no connection whatever, and which emanated from no act of his. Here the thing sought to be removed is not a cloud having the semblance of a strange and adverse title, but an incumberance on the land by act of the warrantor which he has the right, and which it is his duty, to remove, and for which, in case he fails to do it, he must respond in damages to the extent of any excess over the agreed

amount, which his warrantee may be compelled to pay. Though he has no title to the land, nor any sort of claim upon it, there is a liability upon him in respect to it, which arises out of two acts of his own, the execution of the deed of trust to secure the usurious debt, and the subsequent conveyance to Wade, and from which he can only relieve himself by paying the debt or demonstrating its invalidity or non-existence. That he seeks to do by this bill. Should he prosecute it to a finality and obtain an adjudication that the debt has been fully paid, before any sale under the deed of trust, can it be possible that the building association could then sell the land, or that, in the event of an attempt to do so, Wade could not enjoin the sale by proving the adjudication made upon Rorer's bill? That he could do so is too plain and just to call for argumentative support. Having the right to pay the debt, and obviously the incidental right to have the amount of it settled before payment, and the aid of a court of equity to that end in the manner invoked by this bill, namely, by purgation of the usury from the debt, all independently of his grantee, it is manifestly just to allow him to prevent an attempt to sell the property and cast upon him, in advance and anticipation of the settlement, the very liability from which he seeks to escape, and ought to be relieved, according to the allegations of his bill. It is only in respect to the land conveyed that any liability can be fixed upon the plaintiff, and the only mode of fixing it is by compulsory payment of the usurious debt, and the only method of compelling it is actual or threatened sale under the deed of trust. By enjoining the sale, therefore, the plaintiff interferes with the alleged right of no person except the creditor, and he must either enjoin or permit the usurious interest to be collected, and that from himself, not directly, but indirectly.

The jurisdiction for injunction does not necessarily rest upon irreparable injury to result from the sale of the land, however. Equity has properly taken jurisdiction of the controversy between Rorer and the building association, and, having taken jurisdiction of it, neither party would be permitted to resort to another form for the determination of any matter involved in that controversy. A resort to a court of law by the building association for any action which would interfere with or obstruct full and complete administration of the equity jurisdiction of the

subject matter would be promptly enjoined, and obedience to the injunction enforced by attachment for contempt if necessary. *State* v. *Fredlock,* 52 W. Va. 232. A sale under the deed of trust, pending the suit to purge the debt of its usury, though not a resort to another forum, is a proceeding *in pais* which would have all the effect of judgment and execution in another court. As shown by the foregoing observations, it would virtually nullify and defeat, by way of anticipation, the relief sought by the plaintiff in his bill. Without the aid of the injunction, he would be without any remedy at all to prevent the fixing upon him by the building association of a liability in favor of Wade, although not irreparable injury in the ordinary sense of those terms, for the injury might be compensable in damages. But it is clearly a case of want of adequate remedy at law, as regards the fixing of this liability.

The case assimilates itself also to that of an injunction to prevent the transfer, before maturity, of negotiable instruments fraudulently acquired. In such case, the injury would not be irreparable any more than in this case perhaps, as the injured party might have his action at law against the payee after having satisfied the notes in the hands of an innocent purchaser for value. But he is without remedy at law to prevent the use of the notes to fix upon him a liability which has no just or legal foundation. Therefore, he is allowed to enjoin the transfer and cause the notes to be delivered up and cancelled. *Dickinson* v. *Bankers' Loan and Investment Co.,* 93 Va. 498; *Devries* v. *Shumate,* 53 Md. 211; *Hullhorst* v. *Scharner,* 15 Neb. 57; *Jervis* v. *White,* 7 Ves. Jr. 413; *Brumley* v. *Holland,* 7 Ves. Jr. 20. The settlement of this controversy between the plaintiff and defendant, if the case made by the bill shall be sustained, will put it beyond the power of the defendant to make any sale of the land under the deed of trust, for, if the debt be fully paid, as the bill alleges, then the court, by its final decree, will order a release of the deed of trust. These views show that the circumstance of one man's enjoining the sale of another's land is merely incidental to the exercise of the plaintiff's right to invoke the aid of equity jurisdiction and not the foundation of the right itself. In one aspect of the case, the injunction is a mere process in aid of the court's jurisdiction to give full relief in the main

cause. In another, it is a writ to which the plaintiff is entitled on the ground of want of any other adequate remedy.

Though Wade might properly have joined in the prayer for the injunction in view of his ownership of the property, or could have been made a defendant, he had no direct interest in the real controversy between Rorer and the building association, and it is not perceived that he is a necessary party to the bill for the preliminary injunction. In *Harper* v. *Middle States Loan, Building and Construction Co.,* decided at this term, the owner of the property, incumbered by a similar deed of trust, filed a bill for injunction, making the debtor a defendant along with the trust creditor, and the debtor, by her answer, joined in the prayer of the bill and averred an assignment of her claim for usury to the plaintiff, and this Court affirmed a decree, expunging the usury, prohibiting the sale and giving a recovery of money paid in excess of the debt. But the facts in the case were different from those we have here. Wade claims to have paid the association all he agreed to pay and, on his theory, there is no necessity for any action on the part of the plaintiff to prevent him from paying over on the usurious debt anything left in his hands for the purpose, as in the case above cited. The answer alleges an asumption on his part of the plaintiff's entire contract with the building association, but there is a right of retraction in the plaintiff as to this. As he may recover the money back after payment, he may prohibit the payment. If, however, Wade should be bound by the final decree so as to settle the rights of all parties interested, which would accord with the general rule that all persons interested in the subject matter should be parties to a suit in equity, as well as the principle of giving full relief when jurisdiction attaches for one purpose, the failure to make him a party in the first instance was insufficient ground for dissolving the injunction, under the circumstances of the case. It is not too late, however, to bring him in for that purpose at the instance of either party.

Upon the foregoing views, the conclusion is that the court should have overruled the motion to dissolve, and retained the injunction until final hearing, causing all proper amendments to be made as to parties or otherwise. The order appealed from will, therefore, be reversed and set aside, the injunction reinstated, and the cause remanded for further proceedings.

*Reversed.*